Good morning, Your Honor. Donald McPherson to please the Court on behalf of Petitioner. This is a case of almost total failure to investigate by ineffective counsel at time of trial, Mr. Kennedy. It's a given in this case, Your Honor, that we have molestation of this five-year-old. We have the strong likelihood of severe pain and bleeding. We have strong likelihood of complaint to the mother. Yet, strangely enough, we don't have any situation of the mother taking the child to a doctor for these maladies. Mr. McPherson, you're attacking Mr. Kennedy's pretrial investigation. I'm looking at ER 189 through 198, which is a very detailed single-space declaration of all of the steps that he took to prepare this case for trial. Is it your position that that was an ineffective pretrial investigation? Absolutely, Your Honor. And as lengthy as this looks, you would think this gentleman would have done more. But the crux of it is at page 191, which is number 33 at the top, and he said, concludes this work. He hires a private investigator, and he says this work consisted primarily of doing a background investigation of the victim's family. Now, he doesn't even qualify that by saying which members of the family. Is that the mother and stepfather only? Is that the three gentlemen who also lived in the home? We have more than 11 people living in this home at one time, several males. But he goes on to – I mean, he interviewed the detective. He interviews the – before he cross-examines them at trial, he interviews Dr. Strickland, the treating pediatrician. He arranges for a risk assessment to your client, which apparently your client backed out of. He memorialized his interviews of a number of potential witnesses that the State had listed. I'm really having a hard time understanding why you think that's ineffective investigation. He doesn't make a single effort to seek the testimony or the opinion of an expert. And I believe that Dr. Pearson's report alone – What is this effort, then, to try and have him assessed by two different mental health professionals, Dr. Stephen Gray, who apparently he decided to recommend because Dr. Gray is one of those wonderful experts that both sides have great respect for. And if Dr. Gray says we've got a problem here, the Maricopa County Attorney's Office will listen to Dr. Gray and it will improve plea negotiation posture. Your Honor, Dr. Gray is with respect to the defendant's mental health. It has nothing to do with respect to whether the victim was abused, which it's a given that she was. We accept Dr. Strickland's testimony. But Dr. Pearson puts the gloss – more than the gloss, he brings this to a head at – in his testimony or in his letter, he states that it's strange here that a mother who is fastidious with respect to bringing her daughter for medical attention has not, despite the possibility of abuse for the last two years, has not brought his daughter – has not brought her daughter to a doctor for examination. Now, that alone, Dr. Pearson's letter alone, his potential testimony alone is sufficient for an evidence you're hearing I submit. Well, is there – I don't recall in this 10-page declaration, did Mr. Kennedy speak with Dr. Pearson before Dr. Pearson – He did not speak with any potential expert, much less Dr. Pearson. No, he did not. Dr. Pearson – Well, what about the treating forensic pediatrician, Dr. Strickland? I thought he said – He did, yes. He interviewed her. Okay. And she was called as a witness by the State. And she so testified. And she testified that, yes, this young girl had been abused at some time, maybe as far back as two years, and she could not find any evidence of abuse of that day. And that's – you know, that's the alleged offense. Of course, I understand the government's position is we have a bracket of time that goes back, say, a year, but it doesn't go back two years. Well, as I understand – As to the charges. As I understand Dr. Strickland's testimony, she testified that the hymen was torn, but she was unable to establish a time when that occurred. Yes. She said it could be two weeks, two months, or even two years, and that it was broken well before the event at issue, that is, the day of the arrest of Mr. Dennison. So with this evidence, my position is Mr. Kennedy trial counsel should have sought an expert such as Dr. Pearson had he done so. This isn't just mere speculation. We have Dr. Pearson's letter submitted to the district court, discounted basically by the magistrate and the district court, saying, well, it's a so what. Well, our position is it's not a so what. It sets up –  Yes, Your Honor. Even if we assume that there was ineffective assistance of counsel, how can you establish prejudice in light of the other evidence that was admitted at trial? Because the other evidence was not overwhelming, there is a reasonable possibility of no conviction in this case because we have two main issues of ineffective assistance of counsel. One is the failure to investigate. The other is the admission of this videotape. As the magistrate pointed out, the videotape was the real evidence in this case. Had the videotape not come in and the court of appeals had ruled that it was inadmissible hearsay. But wasn't the finding by the Arizona courts that that was a reasonable tactical decision because it allowed the defense to get Mr. Dennison's story before the trial judge as the trier of fact without having to subject him to cross-examination by the prosecutor? And in return for that, he stipulated to – or he got, I guess, also the interview by Detective Shores of your client. Well, as to the tradeoff, that is one videotape for the other. That's no tradeoff at all. That's like buying Manhattan for beans. But the problem I'm having, Mr. McPherson, is this is Federal Habeas Review under AEDPA. I've got a factual finding by the – I guess maybe it's a mixed question of law and fact, but it's a factual finding nonetheless by the Arizona court of appeals that that was a reasonable tactical decision. And how can we declare that to be objectively unreasonable in the face of this record? Well, one of the problems with this record, Your Honor, is no evidentiary hearing. We have a declaration several pages by Mr. Kennedy. My clients never afforded opportunity to examine Mr. Kennedy. Before we get to the evidentiary hearing, as I understand the AEDPA statute, you have to show by clear and convincing evidence that that factual finding is clearly erroneous. Correct, Your Honor. And you haven't done that. And so I'm not sure as a Federal appellate court that we can grant you any relief on that issue. Well, the relief you can grant, Your Honor, is order, remand, and an evidentiary hearing so that Mr. Kennedy can be questioned about these judgment calls that he makes where he just willy-nilly says, I did this and I did that, but there's no cross-examination of exactly what happened and why did he do what he did and why did he not do what he failed to do. Let's return to this refusal of your client or your client withdrawing from his agreement to go through a risk assessment. Until I reached that point in the transcript, I was thinking we really perhaps need an evidentiary hearing, we need more, but all of a sudden your client isn't willing to do those things that would establish his innocence. Well, of course, we have not maintained, Your Honor, actual innocence. That's not an issue in this case. And I think the Court's looking at, okay, as a practical matter, is this gentleman guilty or innocent? He refused to go forward with his exam. But that issue is really not on the table and should not even be considered by this Court, because actual innocence is not before the Court. What should be considered is not the question of whether he was reasonable in refusing to be examined. The question is whether counsel was ineffective and whether or not we should be granted an evidentiary hearing. I thought you had challenged before the district court IAC with regard to whether the plea offer was conveyed or not. That challenge was made in the district court. We have not included that in the appeal. That's correct. And if I may reserve a little bit of time. You want to reserve the last 24 seconds? All right. Thank you, Your Honor. Sure. Good morning. Assistant Attorney General Michael O'Toole appearing on behalf of respondents in this matter. I'd first like to clarify something in a record, Your Honor. Judge Tallman, you indicated that you believe the Court of Appeals made basically a reasoned decision on ineffective claims. In fact, the MEM decision from the Court of Appeals concerned a direct appeal. In post-conviction relief proceedings where the IAC claim was made, the trial court issued a postcard denial, essentially, which was affirmed in another postcard denial by the Arizona Court of Appeals. So we don't really have any kind of a finding one way or the other. No, but under Ninth Circuit precedent, that's still a decision on the merits when we have a postcard denial. As the case cited in my brief says, we basically look at the evidence. But we then have to look at the record and make a determination, do we not, counsel, as to whether or not it would be objectively unreasonable for the state courts to deny relief on that claim? Yes, yes. And what the district court did was exactly that. They looked at it essentially under the totality of the circumstances, the evidence before the state court when the denial was made and also the affidavit from Mr. Kennedy. Counsel? Yes, Your Honor. In view of the fact that there was not a reasoned decision from the state courts, what's your response to opposing counsel's argument that there should have been an evidentiary hearing before this matter was decided in federal court? Well, first of all, Your Honor, under Rule 7B of the Rules Governing Federal Habeas Proceedings, the district court is allowed to take other evidence by way of affidavit. That's exactly what the district court did in this case. And when they did that and then after that set an evidentiary hearing based on the facts that seemed to be in dispute, mainly the plea offer, this plaintiff had or petitioner had submitted an affidavit himself saying, I was never made aware of this plea offer. And counsel said, well, I clearly did make him aware of this plea offer. And from there the court basically had a hearing on the issues that were joined essentially by the affidavits. So is it your position that the ineffective assistance of counsel claim wasn't joined in district court? Well, he made the claim, but basically based on the allegations, he never overcame the presumption of sufficient performance, which is we have from Strickland. Did he request an evidentiary hearing on that point in district court? He never requested an evidentiary hearing after the court basically issued the order concerning the evidentiary hearing. He didn't move to expand that. And then when the report and recommendation came out, again, he did not basically say, well, the magistrate erred by not granting a full evidentiary hearing. So are you arguing that essentially his theory has shifted because he lost on the plea issue, that he switched theories on appeal to us, so now he's pursuing IAC on the pretrial? Well, that was one of his claims in the district court. It was one of his many claims. I'm not sure he's switching theories. He just abandoned that theory because I think he recognizes essentially that finding from the magistrate and the district court based on the credibility of the witnesses where both Mark Kennedy and Petitioner himself testified basically is essentially unappealable, especially as in here where the magistrate and the district court had very detailed findings of fact as far as the credibility goes. Also, even though Petitioner requests an evidentiary hearing to cross-examine Mark Kennedy, he posits no reason why further cross-examination of these basic trial preparation facts would be subject to dispute. And the district court itself basically talks about not having intrusive post-conviction proceedings to question every single detail of a counsel's performance. Further, we also see, aside from the affidavit, we also see basically trial counsel's performance and strategy through the cross-examination of his witnesses. We know he cross-examined and interviewed Dr. Strickland. We know he interviewed and cross-examined Detective Shores and the father. So there was no reason for an evidentiary hearing beyond the scope of the hearing given by the district court. What's your response? As I understood Mr. McPherson's argument, he was saying that, well, okay, he talked to Strickland and he talked to the detective and he talked to the father, but what about pressing the mother on failing to have a doctor take a look at the daughter earlier? Well, that goes back to Dr. Pearson's affidavit or letter that was developed in the If you look at that letter, ER-148, first of all, it basically refutes any claims that there was prior sexual abuse based on these early incidents where the mother took the victim to the doctor. Basically it says, well, I understand you're pointing out, counsel, that these were certain situations where the victim was taken, but absent some signs of trauma in the area, it's not indicative of sexual abuse. The last visit before the injury in this case was discovered was 6-27-96, less than a year before the allegations came to light in this case. So that refutes absolutely a petitioner's claim that there was documented abuse of several years' period of time. Well, maybe I'm misreading this, but as I read Dr. Pearson's conclusion at ER-149, that's a pretty uncertain finding as to whether or not he can say definitively that there has or has not been a sexual assault. Am I reading that right? Well, on page 148 he talks about the prior visits. At the bottom of 149 he basically, I think, doesn't dispute Dr. Strickland's findings, but says he would expect, he wouldn't say, as petitioner says, it would necessarily have caused such severe pain that it would have been reported. He says it would have been expected that there would have been significant pain and bleeding possibly. For whatever reason, and Dr. Strickland at trial, in fact, testified that this certainly would have hurt, whatever caused that injury would have hurt, and that basically just leaves a fact that we really can't tell more about. There's no reason to believe that the mother was told about this injury and did nothing about it, and that just makes no sense. A petitioner's theory is that she was covering up for somebody, but there's no reason why she would cover up the abuse, first of all. And if she was covering up, why would she go to the doctor? I guess the theory is that she needed treatment of some sort, but the record does not indicate whatsoever that she was, in fact, needed any treatment or that she was treated after her examination. Was the State's theory that when Mr. Denison was surprised by the arrival of the father at the home with the victim laying on the kitchen table in a compromising position for Mr. Denison, that no sexual assault had yet occurred, or was the State's theory that that was one of the sexual assaults that took place? The State didn't really specify. They had a broad range, as we often do in these cases involving children. They had a broad range of these three incidents, and it was not the State's theory that was specifically that occasion that it happened. Because as I read the victim's testimony, she's a little vague as to what. . . She can say where the assaults took place, but she doesn't really specify time frame very well. That's correct, and that's to be expected of someone who is five-and-a-half, at seven at trial. In conclusion, the District Court basically made its decision under a Strickland analysis, and on appeal, a petitioner basically falls under Strickland and only Strickland. He never anywhere in his opening reply brief says, in fact, that the State court decision was an unreasonable application of clearly established law. So on that ground alone, we ask you to deny the petition. We're from the District Court's order. If we were to conclude that there should be an evidentiary hearing, just to clear this all up, what would you expect the testimony to be? What would happen? I would expect Mark Kennedy to go up there and testify to his very detailed affidavit, and basically we'd be in the same position we are now. Thank you. Mr. McPherson, I think you've got about 21 seconds. Again, Your Honor, we believe, based on Dr. Pearson's letter alone, page 149, the last three sentences that my client's entitled to an evidentiary hearing, so that Mr. Kennedy can be called to answer serious questions with respect to his lengthy declaration that really doesn't say much of anything. And he never clarifies how this tradeoff is a fair tradeoff. And he never says anything about how this could have been a fair tradeoff.  He never says anything about how this could have been a fair tradeoff. That is one tape for the other. And this was not a nonjury trial. So how is it a big benefit to the defendant to put on his interview of denial by a not-guilty plea before the bench, you have a denial. I suppose that he thought that the very sincere tone and the consistent and continuing denial, if heard by the judge, would be important. Is that an unreasonable decision on his part? I think it's not unreasonable for him to waive the jury trial, I don't believe. I think if you look at the transcripts, if you want to, and it's a very short trial. I didn't try to come up with a time of how actually how long the trial lasted. But there were very few witnesses, and the closing statement was made in about five sentences. So, again, it's a nonjury trial, which is different. You're trying it before the bench. But I think the trial itself evidences just total lack of preparation, not a real interest in representing this client zealously within the bounds of the law. And it's just going through the steps, for lack of a better term, just walking through the steps. Your time has expired. Thank you. The case just argued has submitted.
judges: Fletcher B. , Tallman, Rawlinson